**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| KENNETH KISSELBURG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-05-0715-F |
| ) | |
| AAR ALLEN GROUP, INC. ) | |
| ) | |
| Defendant. ) | |

## ORDER

Defendant AAR Allen Group, Inc.'s Motion to Dismiss on the Pleadings (doc. no. 15) is before the court to the extent that this motion challenges the sufficiency of plaintiff's first and third claims (referred to as "causes of action" in the Petition). These two claims are for wrongful discharge and intentional infliction of emotional distress. The other two claims which were originally alleged in this action were federal claims. Those claims were previously dismissed under Fed. R. Civ. P. 12(b) and (c), for failure to state a claim upon which relief can be granted. (Order of August 31, 2005.)

1. Standards

The same standard applies to the court's evaluation of a motion for judgment on the pleadings as applies to an evaluation of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). 2 Moore's Federal Practice, § 12.38 at n.6 (Matthew Bender 3d ed.). The standard for evaluating a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is well established.  Courts must accept as true all well-pleaded facts and view those facts in the light most favorable to the non-moving party. Sutton v. Utah State Sch. for Deaf and Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). The court must construe the plaintiffs' allegations liberally because the rules require

only general or notice pleading rather than detailed fact pleading so as to do substantial justice. United States v. Uvalde Consol. Indp. Sch. Distr., 625 F.2d 547, 549 (5th Cir. 1980). A claim should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

2.  Wrongful Discharge Claim

The first claim is entitled "Wrongful Termination in Violation of Oklahoma Public Policy." As predicate facts to this claim (and all claims), the Petition alleges that plaintiff Kenneth Kisselburg was terminated by his employer, AAR Allen Group, Inc., after Mr. Kisselburg witnessed and reported to management, occupational safety and health risks which he contends resulted from a co-employee's negligent and dangerous repair of an aircraft. Defendant has moved for dismissal of this first claim, arguing that the Petition fails to state a wrongful discharge claim under the criteria of Rule 12(b)(6).

The Tenth Circuit reviewed the Oklahoma law regarding Burk torts in another whistleblowing case, Wilburn v. Mid-South Health Development, Inc., 343 F.3d 1274 (10th Cir. 2003). (Wilburn involved issues of state public policy but, unlike this action, it did not involve any federal statutes.) As stated in Wilburn, the Oklahoma Supreme court's decision in Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989) recognized a cause of action for a wrongful discharge which is in violation of state public policy, creating an exception to Oklahoma's general rule of at-will employment. Wilburn, 343 F.3d at 1277. Wilburn also restated that familiar rule that the Burk public policy exception "must be tightly circumscribed" and is available only "where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and

compelling public policy." Wilburn at 1277 quoting Burk at 29.  Subsequent to Burk, Clinton v. Logan County Election Bd., 29 P.3d 543 (Okla. 2001) further clarified that when an employee has an adequate federal statutory remedy, that employee does not also have a tort claim for wrongful discharge under Burk. Because the presence of a federal statutory remedy forecloses further discussion of whether a Burk tort might otherwise be available in this case, the court begins with a description of federal statutory law.

The Airline Deregulation Act creates a federal remedial scheme which applies to a plaintiff in Mr. Kisselburg's alleged circumstances. That scheme provides for expedited investigation and determination by the Secretary of Labor of complaints by a person discharge or otherwise discriminated against for having provided the employer with information relating to any violation of any order, regulation, or standard of the Federal Aviation Administration or any other provision of federal law relating to air carrier safety. 49 U.S.C. § 42112(a)-(b). Pursuant to subsection (b)(3) of that statute, if the Secretary of Labor determines that a violation has occurred, the Secretary of Labor shall order the person who committed the violation to take affirmative action to abate the violation, reinstate the complainant to his or her former position together with compensation including back pay and restore the terms, conditions, and privileges associated with his or her employment, and provide compensatory damages to the complainant. At the request of the complainant, the Secretary shall assess against the person against whom the order is issued a sum equal to the aggregate amount of all costs and expenses reasonably incurred, including attorneys' fees and expert fees. 49 U.S.C. 29 P.3d 543, 546.§42112(b)(3). This federal statutory remedial scheme is more than adequate.[1]

---

[1] While the court has considered plaintiff's argument that differences regarding the availability of a jury trial and punitive damages as between these federal acts and Oklahoma tort law

Furthermore, OSHA's anti-retaliation provision, 29 U.S.C. § 660(c), prohibits retaliatory discharge or discrimination against employees reporting safety violations. Under the OSHA statutory scheme, the Secretary of Labor is required to investigate and prosecute meritorious claims of retaliation, and subsection (c)(2) gives the federal district court jurisdiction to "restrain violations" and to "order all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay."

The court finds and concludes that adequate federal remedies exist so that any wrongful termination <u>Burk</u> tort is foreclosed. <u>Clinton</u>, 29 P.3d 543, 546. As <u>Burk</u> is the only alleged or argued basis for any wrongful termination claim, Mr. Kisselburg has failed to state a claim with respect to his wrongful termination claim.

Although this ruling makes it unnecessary to further consider the sufficiency of plaintiff's wrongful termination claim, out of an abundance of caution, and considering the attention given to questions of Oklahoma public policy by the parties in their briefs, the court goes on to address the issue of whether there is a clear and compelling public policy articulated by state constitutional, statutory, regulatory or decisional law, which would allow a <u>Burk</u> tort if that tort were not otherwise precluded due to the federal remedial scheme under <u>Clinton</u>. <u>Wilburn</u> at 1277, quoting <u>Burk</u> at 29 and citing <u>Gilmore v. Enogex, Inc.</u>, 878 P.2d 360, 364 n.19 (Okla. 1994). <u>Wilburn</u> recognizes that in <u>Barker v. State Insurance Fund</u>, 40 P.3d 463 (Okla. 2001) the Oklahoma Supreme Court clarified that both internal and external whistle-blowers may be protected from termination by Oklahoma public policy; <u>Wilburn</u> reiterates that either way, a <u>Burk</u> wrongful termination tort must be predicated upon

---

require the creation of a new <u>Burk</u> tort here, the court disagrees with plaintiff's position. There are extensive federal remedies available to vindicate the interests of individuals who believe they have been retaliated against in circumstances such as plaintiff's alleged circumstances, and there is no need to create additional remedies under state law.

a "clear mandate of public policy." Wilburn at 1278, citing Barker at 468; Wilburn at 1281, quoting Burk at 28.

To support a Burk tort, not only must this clear mandate of public policy be articulated in Oklahoma constitutional, statutory, regulatory, or decisional law, the asserted public policy must support the plaintiff's specific whistleblowing activity. Wilburn at 1278, citing Barker at 468. That is to say, the public policy must govern the plaintiff's situation or encourage the type of reporting which allegedly occurred. Wilburn at 1281. Reference to state laws of a general nature or to laws which do not apply to the defendant, is "too slender a reed upon which to base a public policy tort." *See*, Wilburn at 1281 quoting McKenzie v. Renberg's, Inc., 94 F.3d 1478, 1488 (10th Cir. 1996), and also citing Hayes v. Eateries, Inc., 905 P.2d 778, 781 as "holding that the Oklahoma law criminalizing embezzlement did not state a sufficiently strong public policy to prevent an employee from being terminated after he reported to his employer that his manager was embezzling." Illustrating the necessity of identifying a state law which clearly sets forth a public policy which protection of the alleged whistle-blowing would serve, Wilburn found that three Oklahoma laws relied upon by the plaintiffs in that case were an inadequate basis for a Burk tort.[2] Thus, the

---

[2]The plaintiffs in Wilburn alleged wrongful discharge by their employer, a care facility for the elderly, after plaintiffs reported to management another employee who was suspected of stealing and using drugs from the facility's medication room. The Court upheld the district court's grant of summary judgment in favor of the defendant, finding, for various reasons, that plaintiffs' references to several state laws were inadequate to establish that Oklahoma public policy governed the plaintiffs' situation or encouraged the type of reporting which occurred in that case. Wilburn, 343 F.3d at 1279-82. The plaintiffs cited the Nursing Home Care Act, which the court found did not apply to the defendant. The plaintiffs also cited the Residential Care Act, but the Court found that plaintiffs had waived their arguments under this Act for reasons including the fact that they had not presented sufficient analysis of how the Act impacted the defendant's employees or how the Act's purposes were served by the plaintiffs' actions. The plaintiffs also cited the Uniform Controlled Substances Act, but the Court noted that the sections relied upon by the plaintiffs either did not exist or had been repealed. The court further stated that although plaintiffs presumably referenced that Act to show they were reporting their co-employees' illegal conduct, this was inadequate to establish the type of clear mandate of public policy which was necessary for a Burk tort.

existence of laws which pertain to the same general subject area as the whistle-blowing pertains to is not enough to allow a Burk tort.

Here, plaintiff relies on two Oklahoma statutes as articulating the clear mandate of public policy. The first is "The Oklahoma Aeronautics Commission Act," 3 O.S. § 81 et seq. Plaintiff cites two provisions in this Act. The first is § 83(b), which states that the purpose of the Act is to "further the public interest in aeronautical progress" and which lists, as one means of doing so, "providing for the protection of persons and property through the promotion of safety in aeronautics." This is a statement of the most general kind of public purpose.

The second section of the Act which plaintiff relies on is § 82, the definitions section of the Act. That section includes as part of the definition of "aeronautics" in subsection (a), "the operation, construction, repair, or maintenance of aircraft...." This definition merely states the obvious, however, which is that "aeronautics," as that term is used in the Act, potentially includes that part of the aviation industry which has to do with repair and maintenance of aircraft. Plaintiff has identified nothing in the Act, or in any regulations promulgated by the Aeronautics Commission which is created by the Act, that actually go on, under this broad authority, to address standards of repair or maintenance of aircraft as a matter of public policy.

The court concludes that although the subject matter of the whistle-blowing alleged in this action is the alleged negligent or dangerous repair of aircraft, plaintiff has identified nothing in the Aeronautics Commission Act which regulates, or even specifically pertains to in any way, the repair or maintenance of aircraft or companies which are involved in that business. The court finds that the cited provision of the Aeronautics Commission Act does not constitute the type of clear articulation of public policy to regulate or otherwise govern the manner in which aircraft are

maintained or repaired. Accordingly, the Act does not supply the type of clear mandate of public policy required for a <u>Burk</u> tort.

The other statute which plaintiff relies on is 13 O.S. § 33. This is a 1910 statute which, obviously, dates from a pre-aviation era. This statute applies by its own terms, only to "a carrier of persons for reward." Here, there is no allegation that defendant is a carrier, rather, the allegations indicate only that defendant is involved in the repair of aircraft. Additionally, § 33 provides that "[a] carrier of persons for reward is bound to provide vehicles safe and fit for the purposes to which they are put...." Plaintiff has cited no cases which construe "vehicles" as that term is used this statute to include aircraft, or which otherwise apply this statute to aircraft carriers. Finally, this statute is too general to constitute a clear expression of any intention on the part of the state legislature to regulate or govern in any way the repair and maintenance of aircraft as a matter of Oklahoma public policy, and it does not provide the basis of a <u>Burk</u> tort in this action.

Consistent with the court's conclusion that plaintiff has not identified a clear expression of public policy to encourage the type of whistle-blowing which he alleges occurred in this case, is the fact that the public health and safety concerns which plaintiff describes in the Petition are, as indicated by allegations in the Petition itself, matters which are regulated by federal law, not state law.

For all of these reasons, the court finds and concludes that defendant's motion to dismiss should be granted with respect to plaintiff's wrongful termination claim.

### 3. <u>Intentional Infliction of Emotional Distress Claim</u>

Defendant's first argument supporting dismissal of plaintiff's intentional infliction of emotional distress claim is that because there is no underlying tort for wrongful discharge, there can be no tort of intentional infliction of emotional distress. Plaintiff has not responded to this argument. However, the court's ruling that there

is no available wrongful termination claim under state law does not rest on a finding that there was no improper or wrongful conduct by the defendant. Rather, that ruling rests on the determination that plaintiff has not identified any clearly mandated public policy which would support a claim for wrongful termination. Accordingly, defendant's cases are distinguishable and despite the fact that plaintiff has failed to respond to this aspect of defendant's argument, the court concludes that it would be inappropriate to dismiss plaintiff's intentional infliction of emotional distress claim based on the insufficiency of plaintiff's wrongful termination claim.

Defendant's second argument is that the alleged conduct is not outrageous enough to support an intentional infliction of emotional distress claim. Decisions applying Oklahoma law have found that employment-related fact scenarios generally do not support intentional infliction of emotional distress claims. *See*, Gabler v. Smith, 11P.3d 1269, 1280 (Okla. Civ. App. 2000) (concerning verbal and mental abuse in workplace), and other authorities cited there. The court is also aware of the extremely rigorous proof requirements which such a claim requires. Nevertheless, given the nature of the allegations in this case as involving matters of aviation safety, the court determines that this claim should not be foreclosed at the pleadings stage. The court is mindful of its responsibility, clearly articulated by the Oklahoma cases defining the tort of intentional infliction of emotional distress, to carefully scrutinize the quality of the evidence supporting such a claim. With this caveat, which may be material at a future evidentiary stage, the court concludes that plaintiff's intentional infliction of emotional distress claim should not be dismissed on the pleadings.

Finally, in response to matters urged in plaintiff's response brief, defendant's reply brief appears to add a new, third argument in support of its motion to dismiss this claim. Defendant argues that plaintiff has no cause of action for intentional infliction of emotional distress where the threatened harm -- an airplane crash which

might conceivably result from an inadequate repair -- does not risk injury to the plaintiff but only to unrelated third parties. The case cited by defendant for this argument, Kraszewski v. Baptist Medical, 916 P.2d 241 (Okla. 1996), involved a husband's witness to his wife's injuries when she, as a pedestrian, was hit by vehicle driven by a drunk driver. Not only is Kraszewski entirely different from this case factually, the Oklahoma Supreme Court found in Kraszewski that there were fact issues which precluded summary judgment in the driver's favor on the husband's intentional infliction of emotional distress claim. Id. at 249. Here, where plaintiff argues that if he had not reported the negligent repairs he could have been criminally negligent, and where plaintiff has some involvement in the events in question and where those events could have resulted in certain types of injuries to plaintiff as well as to different types of injuries to unrelated third parties, the court rejects defendant's argument to the extent that it is based on Kraszewski.

For these reasons, the court finds and concludes that defendant is not entitled to dismissal on the pleadings of plaintiff's intentional infliction of emotional distress claim.

## Conclusion

After careful study of the parties' submissions, the pleadings, and the relevant authorities, the court determines that defendant's "Motion for Dismissal Based on the Pleadings" should be **GRANTED** in part and **DENIED** in part, as follows.

The motion is **GRANTED** with respect to plaintiff's wrongful termination claim alleged in Count I of the Petition. Accordingly, plaintiff's wrongful termination claim is **DISMISSED** with prejudice, for failure to state a claim under Rules 12(b)(6) and 12(c). The dismissal is without leave to amend because amendment would be

futile given the extensive briefing which has already occurred during which plaintiff failed to identify constitutional, statutory, regulatory, or decisional law or which clearly mandates any public policy to encourage the type of reporting which plaintiff alleges he undertook and which he claims resulted in his termination.

Defendant's motion is **DENIED** with respect to plaintiff's intentional infliction of emotional distress claim alleged in Count III of the Petition.

The effect of this Order, when combined with the effect of the court's prior Orders including its Order of August 31, 2005 (doc. no. 29), is to leave plaintiff's intentional infliction of emotional distress claim as the only claim remaining for adjudication in this action.

Dated this 1st day of November, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0715p008(pub).wpd